# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 3:05-cr-00018-2 |
| | ) | |
| DONTE HARRIS | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Donte Harris's fully-briefed "Motions for Compassionate Release." (Doc. Nos. 252, 258, 266, 268). Those Motions will be denied because Harris does not come close to establishing that his release is warranted, notwithstanding COVID-19 and the inherent difficulties the spread of that disease can present in a prison environment.

The First Step Act of 2018 expanded a court's ability to grant compassionate release to certain federal prisoners under 18 U.S.C. § 3582(c). Such relief may now be warranted in cases where a prisoner, who has exhausted administrative remedies, files a motion and the court finds that a sentence reduction is warranted based on (1) ""extraordinary and compelling reasons'"; and (2) "any applicable § 3553(a) factors[.]" United States v. Jones, 980 F.3d 1098, 1107–08 (6th Cir. 2020). "[T]he compassionate release decision is discretionary, not mandatory." Id. at 1106. Exercising that discretion, the Court will deny Harris's request for at least three reasons.

**First**, Harris has not shown "extraordinary and compelling circumstances." Without doubt significant medical conditions may establish such circumstances given the reality of COVID-19, but Harris's high blood pressure (hypertension) and asthma do not fit that bill. The Center for Disease Control ("CDC") has determined that individuals with "certain underlying medical conditions *are* at increased risk for severe illness from the virus that causes COVID-19," while individuals with other underlying conditions "*might be* at an increased risk for severe illness from the virus that

causes COVID-19." www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions (all websites last visited 1/29/2021).[1]  Both hypertension and asthma fall into the latter category.

Furthermore, unfortunate though it may be, both high blood pressure and asthma are commonplace. In fact,"[n]early have of adults in the United States (108 million or 45%) have hypertension, www.cdc.gov/bloodpressure/facts, and 8% have asthma, www.cdc.gov/asthma. Given this, the Court "simply . . . cannot say that either of those conditions makes [Harris's] case "extraordinary." United States v. Thompson, 984 F.3d 431, 443 (5th Cir. 2021) (making statement in context of prisoner who had high blood pressure and high cholesterol, citing the 50% figure for hypertension and noting "roughly 12% of Americans suffer from high cholesterol"); see also United States v. Rind, No. 20-12860, 2020 WL 7392878, at *3 (11th Cir. Dec. 17, 2020) (no abuse of discretion in denying compassionate release to inmate who had "Type II diabetes, hypertension, high blood pressure, and asthma"): United States v. Carter, 830 F. App'x 783, 784 (7th Cir. 2020) (denial of compassionate release affirmed, even though inmate had "chronic kidney disease, type 2 diabetes, asthma, obesity, and hypertension").

Finally on this point, Harris's medical record do not show that either his high blood pressure or his asthma is extreme, and he is provided with medication for both. For example, a April 22, 2020 report shows a blood pressure reading of 152/88; a July 8, 2020 report shows "moderate control" of his blood pressure with medication, and a reading of 138/88; an October 16, 2020 report

---

[1] Harris also notes that he has been diagnosed with depression, but does not claim that this alone constitutes extraordinary and compelling circumstances. See United States v. Gross, No. 118CR22SEBTAB01, 2020 WL 7029297, at *3 (S.D. Ind. Nov. 30, 2020) (observing that CDC "does not identify depression or anxiety as conditions that cause an increased risk of developing severe symptoms with COVID-19," and noting that defendant "has failed to show how his depression and anxiety . . . present an extraordinary and compelling reason to allow his early release"); United States v. Spencer, No. CR 95-659, 2020 WL 6504578, at *2 n.3 (E.D. Pa. Nov. 5, 2020) (stating that "the exacerbation of [defendant's] anxiety and depression due to the COVID-19 pandemic is not a compelling reason for release").

2

indicates a blood pressure of 156/99; and a November 24, 2020 report indicate his blood pressure was 125/99. (Doc. No. 264 at 13, 19, 36, 39). These readings are indicative of either Stage I or Stage 2 hypertension, but none are reflective of a "hypertensive crisis," requiring the need for immediate medical attention. www.heart.org/en/health-topics/high-blood-pressure.

As for Harris's asthma, the record indicates that on one occasion "he complain[ed] of asthma related breathing issues,"(Id. at 3), but there is no indication that condition was ever emergent. In fact, a record dated April 22, 2020 states, "Asthma, well controlled. Rare use of albuterol inhaler." (Id. at 35).

**Second**, the Court is not convinced that Harris's release plan will make him any better off in terms of potentially contracting COVID-19, even considering the limited opportunity to socially distance in prison. According to the Federal Bureau of Prisons' ("BOP") inmate locator, Harris is presently confined at the United States Penitentiary, in Thompson Illinois, where 5 prisoners out of a prison population of 1,621 (0.39%) have COVID-19.[2] Conversely, Los Angeles, California, where Harris wants to be released is a hotbed for coronavirus, and, indeed, a statewide lockdown was lifted just days ago. www.//apnews.com/article/california-lifts-stay-home-order-virus. On January 27, 2021, Los Angeles county reported 6,917 new coronavirus cases, while neighboring Orange County reported 1,038 new cases. www.publichealth.lacounty.gov/media/coronavirus; www.occovid19.ochealthinfo.com. Simply put, while Harris understandably would rather be released to his home, the Court cannot conclude that he will be better off there in terms of the risk of contracting the present strains of the coronavirus.

---

[2] Harris may have been recently transferred to Thompson because the parties stated in their briefs that he was housed at the United States Penitentiary in Tucson, Arizona. Even if he remains at that facility, the Court's conclusion would be the same because, presently, only 50 out of 1,271 inmates (or 3.9%) have COVID-19 at USP-Tucson.

3

**Third**, the applicable 3553(a) factors do not warrant release. Harris is towards the end of a fifteen year sentence for bank robbery. That bank robbery, however, consisted of Harris and his co-defendants entering a USBank, pointing automatic weapons at a teller's head, and ordering employees and customers to drop to the floor. The bandits made off with $136,493.00 stuffed in pillowcases. While such robberies (including the use of a getaway car and a U-haul truck as a "switch vehicle") may make exciting and entertaining movie fare, they are terrifying and profoundly affect the victims. Moreover, Harris, a member of the 69 East Coast Gangster Crips, also has convictions for second degree robbery, resisting arrest, grand theft, and being a felon in possession of a firearm. (Presentence Report at 4 & ¶¶ 37, 38, 39).

Harris points out that he was 22 when the instant crimes occurred and is now 39, and notes that one of the offenses of conviction would not count as a crime-of-violence so as to support his career offender status today. Maybe so, but a request for compassionate release under § 3582 is not a vehicle for rearguing the propriety of a final sentence imposed long ago.

In much the same vein, Harris laments that he is still incarcerated "nearly 15 years after his federal arrest . . . because apparently the entirety of his federal sentence was run consecutive to a state sentence in California." (Doc. 258 at 3). Of course, the time for arguing concurrent versus consecutive sentence was at the time of sentencing. Besides, part of the reason Harris is still in jail may be due to the fact that he has had several disciplinary infractions while incarcerated, including mail abuse, interfering with security devices, drinking alcohol, refusing to obey a command, unlawfully possessing suboxone, and introducing drugs into a penal institution. (Doc. No. 270-3 at 1–5).

Accordingly, and for each of the foregoing reasons, Harris's Motions for Compassionate

Release (Doc. Nos. 252, 258) are **DENIED**.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

5

Case 3:05-cr-00018   Document 272   Filed 02/01/21   Page 5 of 5 PageID #: 1247